**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

EMCYTE CORP.,
a Delaware Limited Liability Corporation,

  Plaintiff,

v.              Case No.

APEX  BIOLOGIX, LLC
a Utah Limited Liability Company,

XLMedica, Inc.,
a Florida Corporation,

and

ANNA STAHL,
an individual,

  Defendants.

_____/

**COMPLAINT**
**AND DEMAND FOR JURY TRIAL AND INJUNCTIVE RELIEF**

  Plaintiff, EmCyte Corp. ("EmCyte"), sues Apex Biologix, LLC ("Apex"), XLMedica,

Inc. ("XLM"), and Anna Stahl (collectively, "Defendants") for trademark infringement and

unfair competition, and alleges:

**PARTIES**

1. EmCyte is a limited liability corporation organized and existing under the laws of

  Delaware, and maintains its principal place of business at 4331 Veronica S. Shoemaker

  Blvd., Ste. 4, Fort Myers, Florida 33916.  Among other things, EmCyte develops,

improves and commercializes state-of-the-art devices used in preparing autologous platelet rich plasma from blood samples.

2.  Apex is a limited liability corporation organized and existing under the laws of the State of Utah and maintains a place of business at 5646 South Green Street, Murray, Utah 84123.

3.  XLMedica, formerly known as CellMedica, is a corporation organized and existing under the laws of the State of Florida and maintains a place of business at 6900 Daniels Parkway, Suite 29-PMB 197, Ft. Myers, Florida, 33192.  Anna Stahl is listed as the sole owner, initial officer and director of XLMedica.

4.  Anna Stahl is an individual who was employed by EmCyte in Florida prior to her incorporation of XLMedica.  Anna Stahl's address is also listed in connection with XLMedica as 6900 Daniels Pkwy, Suite 29-PMB 197, Fort Myers, FL 33192.

5.  Upon information and belief, Anna Stahl is operating, conducting, engaging in, or carrying on a business or business venture in Florida at least through XLMedica, Inc., and maintains an office for XLMedica in Florida.

6.  Upon information and belief, XLMedica and Anna Stahl are distributors for Apex.

## JURISDICTION AND VENUE

7.  Plaintiff brings this action for trademark infringement, false designations of origin and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), and trademark infringement under Florida Stat. 495.131.  This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1367, and.

8.  Venue in this judicial district is proper pursuant to 28 U.S.C. § 1319.

9. The exercise of personal jurisdiction over XLMedica is proper because XLMedica is a registered Florida corporation.

10. The exercise of personal jurisdiction over Anna Stahl is proper because she is the registered agent, founder and CEO of XLMedica, a Florida corporation and, upon information and belief, is a resident of Florida.

11. The exercise of personal jurisdiction over Apex is proper pursuant to, *inter alia*, Florida's long-arm statute, section 48.193 (1), (2) and (9), Florida Statutes (2000).  Upon information and belief, Apex is subject to this Court's jurisdiction at least by: supplying, offering for sale, or selling, whether personally or through an agent causing such activities in this judicial district, packaged products falsely marked with United States Patent No. 9,421,319 (the "'319 patent"); shipping or causing to be shipped falsely marked products to consumers in this judicial district; receiving revenue from Florida residents; maintaining an active commercial website that promotes the infringing products, and sells such products through such website to Florida residents in this judicial district; and, entering into agreements which contain provisions for the choice of the law of the State of Florida and their submission to the jurisdiction of the courts of the State of Florida.

## FACTUAL BACKGROUND

I.  **EMCYTE'S RENOWNED, INDUSTRY LEADING BLOOD CONCENTRATING SYSTEMS**

12. EmCyte is the world leader in Platelet Rich Plasma ("PRP") and Progenitor Stem Cell Biologics.

13. For more than 20 years, EmCyte has manufactured the most advanced blood concentrating systems available. EmCyte's products lead the industry in terms of versatility, shorter processing times, reduced processing steps, better regenerative cell procurement and single processing devices.

14. EmCyte's concentrating products include the PURE PRP® SupraPhysiologic and PUREBMC™ SupraPhysiologic products.

15. PurePRP® SupraPhysiologic products provide the most powerful platelet rich plasma concentration of regenerative cells, without the harmful contaminants present in the results of competitor product.  The PurePRP® SupraPhysiologic system is a result of 20 years of bio-engineering research, focused on isolating and harvesting the most powerful regenerative components of patient blood and bone marrow.

16. The Pure PRP® product is shown below in Figure 1.



**FIGURE 1**

17. The PURE PRP® trademark and logo are protected by Florida trademark registration no. T19000001087 and incontestable U.S. Trademark Reg. No. 4,243,377 (collectively, the "PURE PRP® marks").

18. PUREBMC® SupraPhysiologic products are used to concentrate hematopoietic stem cells, mesenchymal stem cells and total nucleated cells from parenchymal red bone marrow.

19. One PUREBMC™ SupraPhysiologic kit is shown below in Figure 2.



**FIGURE 2**

20. The PUREBMC™ word mark is protected by federal and Florida common law. Additionally, the PUREBMC® mark depicted below as Figure 3 is protected by U.S.

Trademark Reg. No. 4,623,664, as well as federal common law trademark protections (together with PURE PRP® marks, the "PURE Marks").



**FIGURE 3**

21. EmCyte has used and promoted its PURE Marks in interstate commerce in connection with blood concentrating products since as early as March 13, 2012.

22. By virtue of EmCyte's long-time, widespread and exclusive use of the PURE Marks in connection with products that are of exceptional quality and functionality, consumers have come to associate products bearing the PURE Marks exclusively with EmCyte.

23. Likewise, EmCyte's extensive use of the PURE Marks has led competitors, vendors and others in the blood concentration industry to associate the PURE Marks exclusively with EmCyte.

24. As a result of such registrations and widespread use, EmCyte's PURE Marks are protected under federal, state and common law trademark and unfair competition laws.

## II.   DEFENDANTS CALCULATED PLAN TO INFRINGE PURE MARKS

25. Apex is a former EmCyte distributor that EmCyte terminated for cause in 2018.

26. Similarly, Anna Stahl is a former EmCyte employee and a distributor, whose Distribution Agreement EmCyte terminated for cause.

27. In October 2015, Anna Stahl propped up XLMedica (formerly known as Cellmedica

Regenerative Technologies, Inc.), a company she intended to use to compete directly with EmCyte.

28. Upon information and belief, Apex, XLMedica and Anna Stahl formed an unfair competition ring to compete unlawfully against EmCyte.

29. Indeed, Apex, Anna Stahl and XLMedica undertook a multifaceted trademark infringement and unfair competition campaign squarely aimed at EmCyte and its customers.  This included taking as their own the PURE Marks, or confusingly similar variants of the PURE Marks.

30. The purpose of their campaign was to sell infringing products that usurp the goodwill associated with EmCyte's PURE Marks.

31. As of the filing of this action, the Defendants' have resorted to numerous unlawful acts calculated to deceive consumers and competitors.  Such acts include at least trademark infringement and unfair competition.

## A.  THE INFRINGING PRODUCTS

32. Apex and Anna Stahl offer for sale and sells kits such as the XCELL PRP Kits, part numbers XC-PRP-60 and XC-PRP-120; and the XCELL BMC Kits, part numbers XC-BMC-60 and XC-BMC-120 (collectively, the "XCELL Devices").

33. In particular, Apex and Anna Stahl have each offered to sell and sold the XCELL Devices using at least the Apex website at www.apexbiologix.com and through the promotional activities of Anna Stahl in this judicial district.

34. For example, Apex offers for sale and sells XCELL Devices, such as the ones depicted in Figures 1 and 2 below.



**FIGURE 4**



**FIGURE 5**

35. Additionally, XLMedica, under the direction and control of Anna Stahl and as a

distributor of Apex, offers for sale and sells platelet rich plasma kits and bone marrow

concentrate kits ("XLMedica Devices," and together with XCELL Devices, "Infringing

Products").

36. Upon information and belief, the XLMedica Devices and XCELL Devices are the same, and both reference the same FDA 510k application - BK180252.

37. For example, XLMedica offers for sale and sells XLMedica Devices and kits such as those depicted in Figures 6 and 7 below, which were taken directly from the XLMedica website. *See* https://xlmedica.com/our-offer/.



PURE PRP KIT

The Pure PRP system creates a highly concentrated injectate of platelets and growth factors to maximize patient treatment outcomes.

- FDA Class II device under 510K number BK180252
- Easy processing and fast, single 10-minute spin
- One kit for Leukocyte-rich and Leukocyte-poor PRP
- Accurately obtain reproducible results consistently
- Fits into many centrifuge systems

**FIGURE 6**



**FIGURE 7**

38. Upon information and belief, Apex manufactures the Infringing Products for both itself and Apex and XLMedica.

### B. XLMEDICA, ANNA STAHL AND APEX'S INFRINGING PURE MARKS

39. At least the XLMedica Devices are offered for sale and sold by at least XLMedica and Anna Stahl under the trademarks PURE PRP and PURE BMA ("Infringing Marks"), which are identical in all material respects to EmCyte's PURE Marks.

40. Defendants were actually aware of EmCyte's senior trademark rights to the PURE Marks when Defendants selected and began using in commerce the Infringing Marks.

41. Infringing Products bearing the Infringing Marks are sold in direct competition with EmCyte's PURE PRP® and PUREBMC™ products.

42. Infringing Products bearing the Infringing Marks are sold in connection with the same or similar types of products associated with EmCyte's PURE Marks.

43. Infringing Products bearing the Infringing Marks are sold to the same or similar types of customers/consumers as those who purchase products sold under EmCyte's PURE Marks.

44. Infringing Products bearing the Infringing Marks are sold through the same or similar channels of trade as those of products associated with the PURE Marks.

45. The Infringing Products are advertised in the same or similar advertising channels as used by EmCyte in the sale of products bearing the PURE Marks.

46. The Defendants have offered to sell and sold the Infringing Products to customers in the United States and in this judicial district.

47. Anna Stahl selected the Infringing Marks with the bad faith intent to create consumer confusion after years of promoting and selling EmCyte products under the PURE Marks. Moreover, Ms. Stahl selected the Infringing Marks after she was terminated for cause by EmCyte.

48. Anna Stahl has deliberately directed promotions for Apex, XLMedica and Anna Stahl's products to EmCyte customers she called on while she worked for EmCyte, thus increasing the likelihood of confusion.

49. Apex, likewise, has targeted and directly emailed known customers of EmCyte promoting the Infringing Products as the "New Pure PRP" device.

**COUNT I**
**(TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1114 BY XLMEDICA AND ANNA STAHL)**

50. EmCyte incorporates by reference the allegations in paragraphs 1 through 49 as if fully set forth herein.

51. XLMedica and Anna Stahl's use of the Infringing Marks, including both PURE PRP® and PURE BMA®, in connection with the Accused Products in the United States infringes upon EmCyte's superior rights in its PURE Marks.

52. Anna Stahl is knowingly and deliberately directing and controlling the infringing activities of XLMedica.

53. XLMedica and Anna Stahl have knowingly and without the consent of EmCyte used the Infringing Marks in interstate commerce in connection with the sale, offering for sale, distribution, and/or advertising of goods, and such activities are likely to cause confusion or mistake, or to deceive consumers in the United States.

54. Upon information and belief, XLMedica and Anna Stahl selected the Infringing Marks, and opted to offer a substantially similar line of products with the intent of deriving benefit from EmCyte's stellar reputation and goodwill.

55. Under the circumstances of this case, the infringing activities constitute intentional, willful infringement in violation of EmCyte's rights under 15 U.S.C. § 1114, and have caused and will continue to cause EmCyte irreparable harm if not enjoined.

56. Unless immediately restrained and enjoined by this Court under 15 U.S.C. § 1116(a) and the equitable powers of this Court, XLMedica and Anna Stahl will persist in their activities, thereby causing EmCyte additional irreparable harm.

57. EmCyte has sustained damages as a result of the infringing activities in an amount to be ascertained at trial, but in no event less than $75,000.

58. Upon information and belief, this case qualifies for a judgment of three times profits or damages, whichever amount is greater, together with attorney's fees pursuant to 15 U.S.C. § 1117(a).

## COUNT II
### (CONTRIBUTORY TRADEMARK INFRINGEMENT BY APEX)

59. EmCyte incorporates by reference the allegations in paragraphs 1 through 49 as if fully set forth herein.

60. Defendants XLMedica and Anna Stahl are engaging in conduct in violation of the Lanham Act, including but not limited to, using in interstate commerce marks, including the PURE PRP® and PURE BMA® marks, which are confusing similar to EmCyte's PURE Marks, in connection with the offering for sale, distribution, and/or advertising of goods, and such activities are likely to cause confusion or mistake, or to deceive consumers in the United States.

61. Apex actually knows or has reason to know that Defendants XLMedica and Anna Stahl are engaging in trademark infringement given the open and notorious character of XLMedica and Anna Stahl's infringing conduct.

62. Apex has continued to supply the Infringing Products to XLMedica even though they know or have reason to know that XLMedica and Anna Stahl are engaging in trademark infringement in connection with the Infringing Marks and the Infringing Products.

63. Apex, therefore bears contributory liability for XLMedica and Anna Stahl's infringing activities in violation of 15 U.S.C. § 1114 and the common law.

64. EmCyte has no adequate remedy at law and has suffered irreparable harm and damage as a result of the contributory infringing conduct of Apex.

65. EmCyte has sustained damages as a result of the contributory infringing conduct of Apex in an amount to be ascertained at trial, but in no event less than $75,000.

66. Upon information and belief, this case qualifies for a judgment of three times profits or damages, whichever amount is greater, together with attorney's fees pursuant to 15 U.S.C. § 1117(a).

**COUNT III**
**(UNFAIR COMPETITION UNDER THE LANHAM ACT, 15 U.S.C. § 1125(A) BY APEX, XLMEDICA AND ANNA STAHL)**

84. EmCyte repeats and realleges the allegations of paragraphs 1-49 as if fully set forth herein.

85. Apex, XLMedica and Anna Stahl have been and are continuing to use a false or misleading description of fact, or false or misleading representation of fact which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Apex, XLMedica and Anna Stahl with EmCyte, or as to the sponsorship, or approval of Apex, XLMedica and Anna Stahl's products or commercial activities by EmCyte.

86. Apex, XLMedica, and Anna Stahl, in commercial advertising or promotion, have misrepresented and are continuing to misrepresent the affiliation, connection, or association of Apex, XLMedica, and Anna Stahl with EmCyte, or as to the sponsorship, or approval of Apex, XLMedica and Anna Stahl's services or commercial activities by EmCyte. This includes, without limitation, Apex, XLMedica and Anna Stahl's use of the Infringing Marks in connection with the Infringing Products.

87. Apex, XLMedica, and Anna Stahl's conduct alleged herein constitutes misappropriation of EmCyte's valuable property rights, and trades on the goodwill symbolized by the

distinctive PURE Marks, including the PURE PRP® and PURE BMC® marks.  Such

use is likely to confuse and deceive members of the purchasing public.

88. Apex, XLMedica and Anna Stahl's conduct alleged herein is harming EmCyte.

89. By virtue of such conduct, Apex, XLMedica and Anna Stahl have engaged in unfair

competition in violation of 15 U.S.C. §1125(a).

90. EmCyte has no adequate remedy of law.

91. Accordingly, EmCyte is entitled to compensatory damages, Apex, XLMedica and Anna

Stahl's wrongfully-obtained profits, injunctive relief and other equitable and monetary

relief against Apex, XLMedica and Anna Stahl.

## COUNT IV
### (COMMON LAW UNFAIR COMPETITION AGAINST APEX, XLMEDICA AND ANNA STAHL)

92. EmCyte repeats and realleges the allegations of paragraphs 1-49 as if fully set forth

herein.

93. Apex, XLMedica and Anna Stahl's acts alleged herein constitute unfair competition in

violation of the Florida common law.  This includes, without limitation, Apex,

XLMedica and Anna Stahl's use of the PURE Marks, including the PURE PRP® and

PURE BMC® marks.

94. Apex, XLMedica and Anna Stahl's use of the goodwill symbolized by the distinctive

PURE Marks, in a manner which is likely to confuse and deceive members of the

purchasing public, constitutes unfair competition.

95. Apex, XLMedica and Anna Stahl's sale of products and services in connection with the

Infringing Marks constitutes unfair competition.

15

96. Apex, XLMedica and Anna Stahl's advertisements that include the Infringing Marks constitute unfair competition.

97. By reason of the foregoing activities, Apex, XLMedica and Anna Stahl have competed unfairly with EmCyte in violation of the common law of the State of Florida.

98. Apex, XLMedica and Anna Stahl's acts have damaged EmCyte and, unless enjoined, will continue to damage and cause irreparable injury to EmCyte' reputation and goodwill.

99. EmCyte has no adequate remedy at law.

100. Accordingly, EmCyte is entitled to compensatory damages, Defendant's wrongfully-obtained profits, injunctive relief and other equitable and monetary relief against Apex, XLMedica and Anna Stahl.

**COUNT V**
**(INFRINGEMENT OF FLORIDA TM NO. T19000001087  AGAINST APEX, XLMEDICA AND ANNA STAHL)**

101. EmCyte repeats and realleges the allegations of paragraphs 1-49 as if fully set forth herein.

102. Apex, XLMedica and Anna Stahl's acts alleged herein comprise trademark infringement of EmCyte's Florida TM No. T19000001087 under the laws of the State of Florida.

103. Apex, XLMedica and Anna Stahl's use of the Infringing Marks for their directly competitive products is likely to cause confusion with the PURE Marks.  This includes, without limitation, Apex, XLMedica and Anna Stahl's use of the Infringing Marks in connection with the Infringing Products.

104. By reason of the foregoing activities, Apex, XLMedica and Anna Stahl have violated and infringed EmCyte's rights in the PURE Marks, and have otherwise competed unfairly with EmCyte, in violation of the common law of the State of Florida.

105. Upon information and belief, all of Apex, XLMedica and Anna Stahl's acts were and are intentional and willful.

106. Apex, XLMedica and Anna Stahl's acts have damaged EmCyte and, unless enjoined, will continue to damage and cause irreparable injury to EmCyte's reputation and goodwill.

107. EmCyte has no adequate remedy of law.

108. Accordingly, EmCyte is entitled to compensatory damages, Apex, XLMedica and Anna Stahl's wrongfully-obtained profits, injunctive relief and other equitable and monetary relief against Apex, XLMedica and Anna Stahl.

**PRAYER FOR RELIEF**

WHEREFORE, EmCyte demands judgment as follows:

1.    Injunctive relief, mandating and/or enjoining Defendants, their officers, directors, members, shareholders, agents, servants, employees, subsidiaries, affiliates, successors, assigns, attorneys, representatives, any entities owned or controlled by any of them, and all those in active concert or participation with any of them, and each of them who receives notice directly or otherwise, from, *inter alia*:

   (a)    representing to anyone, or committing any acts calculated to cause members of the public to believe, that Apex, XLMedica and Anna Stahl's goods or

services have any authority, sponsorship, affiliation, or any connection with EmCyte or EmCyte's goods and services*;*

(b)    using in any manner the Infringing Marks, the PURE Marks, or any other words similar thereto that may cause, or may be likely to cause, confusion, mistake, or deception by the public, alone or in combination with any other word or words;

(c)    unfairly competing with EmCyte;

(d)    continuing to unjustly enrich themselves at EmCyte's expense;

(e)    filing and attempting to register any trademark application for the Infringing Marks, or any other mark(s) confusingly similar to the PURE Marks, in the U.S. Patent & Trademark Office;

(f)    further trademark infringement, false advertisement, and deceptive trade practices by Defendants;

(g)    continuing Defendant's unlawful acts as complained of herein, independent of the violations described in subsections (a) - (f), *supra*; and,

(h)    aiding, assisting or abetting any act prohibited by subparagraphs (a) - (f) above, or engaging in any such act in the future.

2.    An Order, whereby Defendants are ordered to, *inter alia*:

(a)    remove and/or destroy any printed advertising materials or signage using as trademarks or any other name containing the Infringing Marks, the PURE Marks, or any derivative thereof;

18

(b)     pay to EmCyte such damages, together with pre-judgment interest and post-judgment interest, as EmCyte has sustained as a consequence of Apex, XLMedica and Anna Stahl's wrongful acts;

(c)     account for and return pay EmCyte all monies, gains, profits, and advantages obtained by Apex, XLMedica and Anna Stahl due to Defendant's wrongful acts, together with pre-judgment interest and post-judgment interest;

(d)     pay exemplary and punitive damages to EmCyte that the Court finds appropriate to deter any future tortious or unlawful conduct, in an amount at least three times the amount of EmCyte's actual damages plus Apex, XLMedica and Anna Stahl's wrongfully-obtained profits;

(e)     pay to EmCyte, EmCyte's costs of this action, including, without limitation, EmCyte's attorneys' fees; and,

(f)     pay to EmCyte the costs associated with corrective advertising sufficient to remedy consumer confusion caused as a result of Apex, XLMedica and Anna Stahl's wrongful acts

(g)     destroy all Infringing Products and packaging with any reference to the term PURE.

3.     A Judgment and/or Declaratory Judgment declaring that, *inter alia*:

(a)     Defendants' courses of conduct set forth hereinabove are unlawful*;*

(b)     EmCyte is the rightful and prior user of the PURE Marks;

(c)     the PURE Marks and the EmCyte Logo Mark are valid; and

(d)     Apex, XLMedica and Anna Stahl infringe EmCyte's trademark rights

including, without limitation, the PURE Marks and all other related marks.

4.     An award to EmCyte for such other and further relief as this Court may deem just.

## Jury Demand

Plaintiff hereby demands a trial by jury on all issues properly triable to a jury.

Dated: October 23, 2019                           Respectfully submitted,

By: *Alejandro J. Fernandez*
    Alejandro J. Fernandez, Trial Counsel
    Board Certified in Intellectual Property Law
    FL. Bar No.: 32221
    E-mail: AFernandez@brinksgilson.com
    Stephen J. Leahu, Trial Counsel
    Board Certified in Intellectual Property Law
    FL. Bar No. 54037
    E-mail: SLeahu@brinksgilson.com
    **BRINKS GILSON & LIONE, P.C.**
    SunTrust Financial Centre
    401 E. Jackson Street, Suite 3500
    Tampa, FL  33602
    Telephone No. (312) 321-4200
    Facsimile No. (312) 331-2499

    *Counsel for Plaintiff*