IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| EMCYTE CORP.<br><br>v.<br><br>APEX BIOLOGIX ET AL. | Case No. 2:19-cv-00769-JES-NPM |

## MOTION TO DISMISS OF APEX BIOLOGIX FOR LACK OF PERSONAL JURISDICTION; OR, IN THE ALTERNATIVE, MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendant Apex Biologix LLC ("Defendant" or "Apex Biologix"), by and through undersigned counsel, respectfully requests this Court's dismissal of the Complaint of Plaintiff Emcyte Corp. ("Plaintiff" or "Emcyte"), in full, for (a) lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), or, (b) in the alternative, failure to state a claim under Fed. R. Civ. P. 12(b)(6).

### PROCEDURAL BACKGROUND

Plaintiff filed the present suit in this Court on October 23, 2019. *See* Dkt. #1. The Complaint seeks relief for trademark infringement and unfair competition. *Id.* at 1. Plaintiff asserts that this Court has personal jurisdiction over Defendant because it maintains an active commercial website and enters into agreements that make Florida a proper jurisdiction. *Id.* at ¶ 11. The Complaint makes numerous other factual allegations about Apex Biologix, most devoid of any necessary factual support. *See generally* Dkt #1. Defendant disputes this Court's ability to lawfully exercise personal jurisdiction over Apex Biologix and accordingly seeks dismissal of this matter by way of the instant motion.

### FACTUAL BACKGROUND

Apex Biologix is a regenerative medicine company offering a variety of high-quality regenerative medicine products and marketing services. *See* Affidavit of Dan

Crane, Exhibit #1 at ¶ 3. Apex Biologix is a Utah Limited Liability Company. The firm was organized in Utah in May of 2014. Apex Biologix has continued to operate as a Utah entity since it was formed. *Id.* at ¶ 4. Apex Biologix's location is in Utah, at 5646 South Green St. Murray, Utah 84123. *Id.* at ¶ 5.

Many of Apex Biologix's sales are made through its own website: ApexBiologix.com. which is hosted on a third-party web hosting platform. *Id.* at ¶ 6. ApexBiologix.com provides information about Apex Biologix products, instructions for using the products, and numerous photographs of the products. *Id.* at ¶ 7. The website ApexBiologix.com is published on the Internet and is available to all members of the public with Internet access. *Id.* at ¶ 8. The content published via ApexBiologix.com is presented in the exact same manner to all Internet visitors, regardless of the physical location from which the visitor accessed the website. *Id.* at ¶ 10. If a visitor visited ApexBiologix.com and subsequently wanted to purchase a product from ApexBiologix.com, they could browse the products, select their preferred products, and enter their shipping information. *Id.* at ¶ 13. Apex Biologix has no control over the customer-supplied shipping information. *Id.* at ¶ 14. Although many orders come from the website, orders are also taken over the phone by the Apex Biologix sales team that is based in Utah. *Id.* at ¶ 15. In either case, the fulfillment process is similar. After the order is issued, the corresponding products are shipped from Utah to the customer, at the customer's direction. *Id.* at ¶ 16.

In creating the ApexBiologix.com website and pursuing commerce through the Internet, Apex Biologix does not direct its marketing and advertising toward any particular location within the United States or at any individual State. *Id.* at ¶ 17. Apex Biologix similarly does not seek to reach the consumers of any particular geographic region, nor does Apex Biologix intentionally seek to gain the benefits of operating within a particular State. *Id.* at ¶ 18.

Apex Biologix's only engagement with Florida customers would occur in one of three situations. First, engagement would occur if an individual located in Florida affirmatively seeks out and accesses ApexBiologix.com on their electronic device. *Id.* at ¶ 19. Second, other contacts might occur where an individual uses the website to request that Apex Biologix ship a product to Florida. In that case, Apex Biologix collects customer data, from its Utah office, and the product is subsequently shipped from Utah. *Id.* at ¶ 20.  Apex Biologix also has national advertising campaigns, via email, for example, that are not targeted at any specific state. Apex Biologix may also meet potential customers at conferences, via referrals from other customers, and similar. *Id.* at ¶ 21.

While Apex Biologix has, on occasion, collected order information containing a Florida address, solely at the request of a customer, such shipments have been a very small percentage of Apex Biologix's total sales and are not out of proportion compared to sales in the other states in the nation. *Id.* at ¶ 22. In fact, proportionally, Apex Biologix sells fewer products to Florida compared to Florida's population *vis a vis* the United States. *Id.* at ¶ 23.

Apex Biologix is not currently authorized to do business in Florida, nor does it have any offices, property, employees, personnel, or agent for service of process or for any other purpose in Florida. *Id.* at ¶ 25. Apex Biologix does not own any bank accounts, security interests or any other types of assets in Florida. *Id.* at ¶ 26. Apex Biologix does not directly advertise any goods or services in Florida. *Id.* at ¶ 27. Apex Biologix does not contract to supply services or goods in Florida. There was one previous instance where Apex Biologix and EmCyte had a now-expired distribution agreement, but Apex Biologix's "territory" in that instance was "United States and Canada," and Apex Biologix had the absolute right to "solicit sales from any potential customer in the field of use anywhere in the Territory." Apex Biologix never contracted to supply goods and services to any person in Florida under that agreement. *Id.* at ¶ 28. Apex Biologix has

3

never caused tortious injury by an act or omission in Florida. *Id.* at ¶ 29. Apex Biologix
does not solicit business, engage in any other persistent course of conduct or derive
substantial revenue in Florida. *Id.* at ¶ 30.

## ARGUMENT

Because Apex Biologix is not a resident of Florida, this Court must consider
whether the Court can lawfully assert personal jurisdiction over Defendant. In the
alternative, even if personal jurisdiction is proper, the Complaint is so devoid of credible
allegations as to Apex Biologix that it must be dismissed for failure to state a claim.

## I. DEFENDANT IS NOT SUBJECT TO PERSONAL JURISDICTION IN THIS COURT

### A. Legal Standard

The case law addressing personal jurisdiction over a defendant, pursuant to Fed.
R. Civ. P. 12(b)(2), is well-developed. "When a defendant challenges the sufficiency of
personal jurisdiction, the plaintiff bears the burden of establishing personal jurisdiction
over the defendant." *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1194 (9th Cir.
1988) (*citing Cubbage v. Merchant*, 744 F.2d 665, 667 (9th Cir. 1984), *cert. denied*, 470
U.S. 1005 (1985)). "The Court may consider evidence presented in affidavits and
declarations in determining personal jurisdiction." *Wine Bottle Recycling, LLC v.
Niagara Sys. LLC*, 2013 U.S. Dist. LEXIS 37273, at *9 (N.D. Cal. Mar. 18, 2013) (citing
*Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)).

Florida's long-arm statute applies in questions of personal jurisdiction. *See* Fla.
Stat. Ann. § 48.193. To prove personal jurisdiction is proper, a Plaintiff must show a
statutory long-arm basis to assert jurisdiction *and* satisfy constitutional requirements of due
process. *See generally Ford Motor Co. v. Atwood Vacuum Mach. Co.*, 392 So. 2d 1305,
1307 (Fla. 1981). The Florida Supreme Court has established a two-step process to
determine if personal jurisdiction exists. *Venetian Salami Co. v. Parthenais*, 554 So. 2d
499 (Fla. 1989). First, a court must evaluate whether there are sufficient facts to bring the

action within the confines of Florida's long-arm statute. Second, if the long-arm statute applies, the court must conduct a due process analysis. *Id.*

### 1. Florida's Long Arm Statute, Types of Jurisdiction

Personal jurisdiction can exist in two forms: "specific," in which the alleged activities or actions of the defendant are directly connected to the forum state, and "general," in which the defendant's connection with the forum state is so substantial that no specific or enumerated relationship between the alleged wrongful actions and the state is necessary. *Caiazzo v. Am. Royal Arts Corp.*, 73 So. 3d 245, 250 (Fla. Dist. Ct. App. 2011). Florida's long-arm statute "addresses both specific and general jurisdiction. *Id.* In each case, Florida's long-arm statute is to be strictly construed. *Crowe v. Paragon Relocation Resources, Inc.*, 506 F. Supp. 2d 1113, 1119 (N.D. Fla. 2007).

### 2. Specific Jurisdiction

Specific jurisdiction is contemplated by the Florida long-arm statute. Fla. Stat. § 48.193(1)(a) provides, in relevant[1] part:

> (a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> > 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
> > 2. Committing a tortious act within this state.
> > . . .
> > 9. Entering into a contract that complies with s. 685.102.[2]

Pursuant to Florida's long-arm statute, a nonresident defendant may only be subject to specific jurisdiction under section 48.193(1) when the defendant committed any of the acts enumerated in the subsection within Florida and the cause of action arose from the act. *Caiazzo*, 73 So. 3d at 256.

---

[1] The only subsections claimed by Plaintiff in its Complaint. *See* Complaint at ¶ 11.
[2] As explained below, this subsection is plainly inapplicable, based on the text of the statute itself.

3. *General Jurisdiction*

Next, Fla. Stat. § 48.193(2), addresses general jurisdiction in Florida, and states:

A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

The verbiage "substantial and not isolated" has been interpreted to mean "continuous and systematic general business contact" with Florida. *See, e.g. Woods v. Nova Cos. Belize Ltd.*, 739 So. 2d 617, 620 (Fla. 4th DCA 1999); *Am. Overseas Marine Corp. v. Patterson*, 632 So. 2d 1124, 1128 (Fla. 1st DCA 1994). The United States Supreme Court has recently reiterated that the defendant's contacts must be "so 'continuous and systematic' as to render them essentially at home in the forum State" for a court to exercise general jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2856 (2011).

**B. Specific Personal Jurisdiction is Not Proper**

Specific jurisdiction is not proper because Defendant's activities do not rise to the standard that the law requires.

1. *Defendant Has Not "Submitted Itself" to Florida*

Defendant did not commit an intentional act in Florida because Defendant never purposefully sold its goods to Florida consumers or otherwise engaged in any activity in Florida. As discussed above, Apex Biologix's website is accessible in exactly the same way, regardless of a visitor's physical location, and the user experience is the same for every consumer. The websites are not specifically advertised in Florida or otherwise attempting to target Florida visitors. Apex Biologix intends only to list its goods for sale

in a borderless online forum. Any purchases made by Florida consumers were the serendipitous results of listing goods online.

If jurisdiction were proper based on the affirmative acts of customers, then a few purchases by any potential plaintiff, in their forum of choice, could artificially create personal jurisdiction over sellers like Defendant in any jurisdiction in the United States. As noted, numerous courts have soundly rejected purported assertion of personal jurisdiction over a foreign defendant based on this type of flawed analysis.

Even if Plaintiff were to demonstrate that Defendant had a few sales in Florida, Plaintiff cannot demonstrate that Apex Biologix committed an intentional act in Florida. Courts reject reliance on "results" such as minor sales, and there is no demonstration of any "intentional act" by Defendant.

### 2. Defendant Did Not Expressly Aim Sales Activities at Florida

Defendant has not aimed any sales activity at Florida or its consumers. Visitors to Defendant's website see the exact same website, and have the same user experience, as visitors from all over the world. Even if it would be foreseeable that Florida consumers would visit the storefront and purchase goods, this fact is insufficient to establish the "express activity" required for specific personal jurisdiction. Indeed, if a Defendant were to sell one hundred (100) products via its online store, it is potentially "foreseeable" that there would be at least one purchase in every State in the Union. There is little question that this perfectly foreseeable result would not subject Defendant to personal jurisdiction across each of the States in the Union.

### 3. *Defendant Never Knew that Harm was Likely in Florida*

One prominent court refused to apply personal jurisdiction to a defendant that lacked a proactive scheme to target a specific plaintiff's trademarks, even though the plaintiff claimed it was in the alleged forum where it resided. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 420 n.6 (9th Cir. 1997). The Court explained that to hold otherwise, "every complaint arising out of alleged trademark infringement on the Internet would automatically result in personal jurisdiction wherever the plaintiff's principal place of business is located. That would not comport with traditional notions of what qualifies as purposeful activity invoking the benefits and protections of the forum state." *Id.* at 420.

Defendant in this case could not have anticipated that harm was likely in Florida. Indeed, Defendant denies that there is any infringement, of any kind. Moreover, as no commercial activities were directed toward Florida or its consumers, it would be improper to hold that Defendant should be expected to anticipate that harm would be likely in Florida. As precedent clearly states, the Plaintiff's business place in Florida does not mean that the Defendant has purposefully directed activities to Florida or possessed the requisite knowledge that harm was likely to occur in Florida.

Finally, even if Defendant is hypothetically infringing Plaintiff's intellectual property rights, which Defendant fully denies, such infringement would be happening in Utah, where Defendant is located and operates its business. In sum, specific personal jurisdiction cannot be maintained over Defendant.

### 4. *Fla. Stat. § 48.193(1)(a) is Inapplicable*

Plaintiff claims, in its Complaint, that Defendant's "entering into a contract that complies with s. 685.102," subjects Defendant to personal jurisdiction. *See* Complaint at

¶ 11. The relevant statute provides that jurisdiction may be proper "if the action or proceeding arises out of or relates to any contract, agreement, or undertaking." *See* Fla. Stat. § 685.102. Here, it is undisputed that there is no allegation of any breach of contract, nor could there be. To the extent that the Plaintiff makes such a claim, it must do so, plainly and clearly. To the extent a contract is alleged as "related," Defendant will review the claims, and raise defenses and counterclaims accordingly. Barring such an allegation, personal jurisdiction is not properly applied by virtue of the existence of any contract.

### C. General Personal Jurisdiction is Not Proper

Apex Biologix has only *de minimis* contacts with Florida, arising from online sales of its products. These minimal contacts, however, provide no basis for the exercise of general personal jurisdiction over Defendant

In Florida, courts have consistently "found that a company's level of business in Florida may be insufficient to constitute 'continuous and systematic business activities' when only a de minimis percentage of the total sales is derived from its sales to Florida. *Caiazzo*, 73 So. 3d at 259 (*citing Trs. of Columbia Univ. v. Ocean World, S.A.*, 12 So. 3d 788, 793 n.2 (Fla. Dist. Ct. App. 2009) (listing numerous cases in which general jurisdiction was not found when the percentage of sales in the forum state ranged from less than 1% to 12.9%).

Here, Apex Biologix's online activities, including sales made via its own web site, were not directed at any particular state or jurisdiction. *See generally* Exhibit #1. As explained in the Affidavit of Dan Crane, Defendant's online activity was passive, merely selling pre-determined products to any visitor that chose to visit Defendant's online marketplace. Defendant's online activity was not limited to Florida or any other specific geographic region. Apex Biologix in no way targeted Plaintiff or otherwise "purposefully directed" any conduct at Plaintiff or any other resident of this forum.

9

Aside from its websites, Defendant's contacts with Florida were all indirect, such that it would be impossible for Defendant to have committed a tortious act within Florida. *See generally* Exhibit #1. In sum, under any analysis, Apex Biologix's online sales activities fall well short of the Defendant being "essentially at home in the forum State," as the United States Supreme Court has required. *See Goodyear Dunlop Tires Operations, S.A.*, 131 S. Ct. 2856.

### D. Personal Jurisdiction Over Defendant Violates Due Process

Even if there were sufficient jurisdictional contacts in this matter, which there are not, Defendant may still "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985). The Court looks at these factors together to determine whether jurisdiction in Florida "would be so unreasonable as to violate due process." *Id*. When evaluating the facts of a case, a court must work to ensure that a defendant's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). In determining whether or not the exercise of jurisdiction over a non-resident defendant is permissible under the Due Process Clause of the Constitution, a court considers:

> [T]he burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'

*Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 105 (1987) (quoting *World-Wide Volkswagen*, 444 U.S. at 292). In this case, Plaintiff cannot prove that jurisdiction would compote with due process.

### 1. Defendant's Purposeful Interjection into Florida Has Been Minimal

Defendant has not significantly interjected itself into Florida through sales, advertising, or any other targeted business activity. Defendant does not derive significant

revenue from sales in Florida. The minimal presence Defendant possesses in Florida is online only and happens at random as visitors search for goods via Defendant's website. Because Defendant's presence in the purported forum state is so minimal, adjudicating a claim against Defendant in Florida is unreasonable and inconsistent with principles of "fair play."

*2. Defending Plaintiff's Claims in Florida Would Be Burdensome*

The expense and burden of traveling approximately 2,300 miles from Utah to appear in this Florida court, likely several times, will be substantial. Expending such funds on merely accessing the forum to defend itself, Defendant would be placed at a severe disadvantage in comparison to the Plaintiff, with a principal place of business operations located in Florida. The burden imposed upon the Defendant to litigate in Florida is so comparatively unfair that it would rise to the level of a violation of due process.

*3. Plaintiff's Interest in Convenience Does Not Outweigh Goals of Fair Play and Substantial Justice*

While trying the case in Florida would be more convenient for the Plaintiff, exercising jurisdiction over a defendant must not "offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. The costs imposed upon Defendant would be severe if the instant case is heard in Florida, placing the Defendant at a real and significant disadvantage as compared to the Plaintiff. Such a burden offends the traditional notions of fair play and outweighs the Plaintiffs' interests in trying their claims in a forum that is exclusively convenient to them.

*4. Trying Plaintiff's Case in Florida Would Cause Inefficiency*

Trying a case against Defendant would cause substantial judicial inefficiency. Defendant's business, records, and operations are all located in Utah, as are all parties likely to be deposed in the instant case. Trying the case in a forum so distant from all operations of the Defendant is likely to increase inefficiency and unnecessarily slow the

judicial process. This factor increases the unreasonableness of exercising personal jurisdiction in a Florida court.

   *5. Both States Bear Interest in Adjudicating the Case*

   More than one state can possess an interest in the resolution of a case when the two parties reside in different forums. *Sher v. Johnson*, 911 F.2d 1357, 1364 (9th Cir. 1990). Florida, in this case, bears an interest in adjudicating cases that protect its residents and businesses from infringement on their intellectual property. Utah, on the other hand, likewise has an interest in regulating the operation of business established in their state and preventing intellectual infringement by its businesses. In this way, both states would be appropriate and effective forums for adjudicating the Plaintiff's claims.

   In sum, jurisdiction over Defendant offends notions of due process. Jurisdiction cannot be properly maintained.

## II. IN THE ALTERNATIVE, PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(B)(6)

   In the Complaint, Plaintiff set forth several claims against Defendant, including Count II for "Contributory Trademark Infringement," Count III for "Unfair Competition Under the Lanham Act, 15 U.S.C. § 1125(A)" Count IV for "Common Law Unfair Competition," Count V for "Infringement of Florida TM No. T19000001087." Each and every one of these claims fails because Plaintiff provides absolutely zero factual basis for any of the claims, as is required by United States Supreme Court jurisprudence.

   **A. Standard of Review**

   "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests' . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule

12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . ." *Id.* (alteration in original) (internal citations omitted).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

### B. Allegations as to Apex Biologix are Limited; Insufficient to State Claims

Apex Biologix's purported actions are raised in the Complaint only in passing. The crux of the allegations are that Apex Biologix "knows or has reason to know that Defendants XLMedica and Anna Stahl are engaging in trademark infringement" and "Apex continues to supply the Infringing Products to XLMedica even though they know or have reason to know that XLMedica and Anna Stahl are engaging in trademark infringement." *See* Complaint at ¶ 61, 62. Virtually all of the allegations are against the other Defendants. In short, the inclusion of Apex Biologix, in any form, raises serious questions as to the validity and viability of the Plaintiff's claims.

### C. Allegations as to Count II are Insufficient

To establish a federal trademark infringement claim, contributory or otherwise, a Plaintiff must show that the Defendant uses the Plaintiff's registered mark "in connection with the sale, offering for sale, distribution, or advertising of any goods or services." 15 U.S.C. § 1114(1)(a). A review of the Complaint makes it clear that Plaintiff fails, completely, to allege any in commerce use by Apex of any of the intellectual property.

To the extent that any infringement exist, Plaintiff would certainly have records that would demonstrate these allegations, and such records could easily be attached as exhibits, or pled with particularity, including specific Internet URLs, dates, times, receipts, and more. The fact that the Complaint does not contain such details is a critical failure to any maintenance of Plaintiffs' trademark claims. There is no infringement here, at all, and Plaintiff certainly cannot sufficiently plead any "sale" or "offering for sale" that would be sufficient to state a contributory trademark infringement claim.

### D. Allegations as to Count III, IV, and V are Insufficient

Liability is only possible for one "who, on or in connection with any goods or services, or any container for goods, uses *in commerce* any word, term, name, symbol, or device, or any combination thereof . . . " 15 U.S.C. § 1125(a). *See also Albertson v. Anaston*, 266 F. Supp. 1015, 1018 (N.D. Ill. 1967) ("The threshold question before the court is whether the complaint alleges facts which meet the requirements of § 43(a), i.e., whether goods or services have been caused 'to enter into commerce' with a false description or designation of origin"); *see also Blazon, Inc. v. Deluxe Game Corp.*, 268 F. Supp. 416, 428 (S.D.N.Y. 1965) ("the requirement of the statute that the goods upon which the false designation appears must enter into interstate commerce is not to be lightly taken since it is jurisdictional in nature"). Each of Counts III, IV, and V fails because all of the supporting facts necessary to sufficiently plead those allegations are entirely within Plaintiff's control, yet are not included as allegations. The lack of specificity is truly notable, yet not surprising. In this case, the Defendant is merely subject to bald accusations from a frequent litigant that is misdirecting ire more properly directed toward other parties. In short, Plaintiff is angry because "Apex is a former EmCyte distributor." *See* Complaint at ¶ 25. Plaintiff knows that all of the claims are weak, but now seeks "retribution" in the form of this suit, regardless of the factual and legal merits of the same.

A brief review of the Complaint demonstrates that the Plaintiff has *clearly* "not show[n]" any plausible infringing activities actionable as to Apex Biologix. The Complaint must be dismissed.

## CONCLUSION

Given all the preceding, Defendant requests that the Complaint be dismissed for lack of personal jurisdiction, or, in the alterative, dismissed for failure to state a claim upon which relief may be granted.

* * *

Respectfully Submitted,

/s/ Eric Menhart
Eric Menhart, Esq. *
Lexero Law
316 F St NE Suite 101
Washington, DC 20002
Office: (855) 453-9376
Fax: (855) 453-9376
Eric.Menhart@Lexero.com
* Pending Admission *Pro Hac Vice*

/s/ Tristan Wolbers
Tristan Wolbers, Esq.
Tajer Wolbers PLLC
12157 W. Linebaugh Ave. Ste. 444
Tampa, FL. 33626
Office: (813) 922-2999
Fax: (888) 922-6070

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2019, a copy of the foregoing was served via the Court's electronic filing system and all counsel of record were served via that method.

/s/ Eric Menhart
Eric Menhart, Esq.