UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EMCYTE CORP.,

        Plaintiff,

v.                          Case No: 2:19-cv-769-JES-NPM

XLMEDICA, INC., and
ANNA STAHL,

        Defendants,
_____

XLMEDICA, INC., and
ANNA STAHL,

        Counter-Plaintiffs,

v.

EMCYTE CORP.,

        Counter-Defendant,

And

PATRICK PENNIE,

        Third Party-Defendant.

_____

## OPINION AND ORDER

    This matter comes before the Court on review of plaintiff's Omnibus Motion to Dismiss Amended Counterclaims and Strike Affirmative Defenses, Immaterial, Scandalous Allegations, and Improper Answers (Doc. #124) filed on August 6, 2021. This motion seeks to (1) strike portions of the Amended Answer; (2) strike all

of the affirmative defenses; (3) strike portions of the Counterclaim; and (4) dismiss two counts of the Counterclaim. Defendants/Counter-Plaintiffs filed a Response in Opposition (Doc. #125) on August 17, 2021. For the reasons set forth below, the motion is granted in part and denied in part.

## I.

In a prior Opinion and Order (Doc. #109), the Court gave an overview of plaintiff's allegations in this case.

> Plaintiff EmCyte Corporation (Plaintiff or EmCyte) initiated this lawsuit against defendants XLMedica, Inc., Anna Stahl, and Apex Biologix, LLC (collectively Defendants, or individually XLMedica, Stahl, or Apex). (Doc. #1). The Second Amended Complaint (Doc. # 22) (SAC) alleges that EmCyte is the world leader in Platelet Rich Plasma (PRP) and Progenitor Stem Cell Biologics. (Doc. #22, ¶ 1.) For over 20 years, EmCyte has manufactured blood concentrating systems, and develops, improves, and commercializes state-of-the-art devices used in preparing autologous platelet rich plasma from blood samples and bone marrow. (Id. at ¶¶ 12-13, 15.) The SAC alleges that Plaintiff's blood concentrating systems include the PURE PRP® SupraPhysiologic (PURE PRP) and PURE BMC™ SupraPhysiologic (PURE BMC) products, both of which are protected under federal, state, or common law trademark and unfair competition laws. (Id. at ¶¶ 14, 16(Figure 1), 17, 19(Figure 2), 20(Figure 3), 27.) Plaintiff has continuously and extensively promoted its trademarked products in interstate commerce in connection with blood concentrating products since March 13, 2012. (Id. at ¶¶ 22, 24.)
>
> The SAC further alleges that defendant Stahl, a former EmCyte employee and distributor, founded XLMedica to directly compete with

2

EmCyte. (Doc. #22, ¶¶ 38, 41-45.) Stahl and XLMedica undertook a multifaceted trademark infringement and unfair competition campaign squarely aimed at EmCyte and its customers by selling products offered under infringing marks, i.e. PURE PRP KIT and PURE BMA CONCENTRATION KIT, or confusingly similar variants (Infringing Marks) that usurp the goodwill associated with EmCyte's trademarks. (Id. at ¶¶ 43-45, 51 (Figures 6 and 7.))

The SAC sets forth the following remaining claims: trademark infringements in violation of 15 U.S.C. § 1114 (Count I); contributory trademark infringements under § 1114 and common law (Count II); unfair competition under the Lanham Act, 15 U.S.C. § 1125(a) (Count III); common law unfair competition (Count IV); infringement of Florida TM No. T19000001087 (Count V). Plaintiff seeks injunctive relief to prohibit XLMedica and Stahl from using the Infringing Marks and engaging in unfair competition, a declaratory judgment related to its trademarks, compensatory and punitive damages, and reasonable attorney's fees. (Id., pp. 24-26.)

(Doc. #109, pp. 1-3.) This Opinion and Order denied a motion to dismiss the SAC.

In due course Defendants filed an Amended Answer and Counterclaim With Demand For Jury Trial and Injunctive Relief (Doc. #123), which included an Answer, a three-count First Amended Counterclaim (the Counterclaim), and nine affirmative defenses. Defendants' Counterclaim asserts counts alleging: (1) entitlement to a declaratory judgment of invalidity and cancellation; (2) tortious interference with advantageous business relationship; and (3) abuse of process. (Id., pp. 18-21.)

Plaintiff now moves to dismiss the second and third counts of the Counterclaim for failing to state a claim. Plaintiff also seeks to strike all of Defendants' affirmative defenses, and certain improper answers and immaterial facts contained in the Amended Answer. (Doc. #124, p. 2.) Defendants respond that they have adequately pled the counts in their Counterclaim, and that neither their affirmative defenses nor the other allegations should be stricken since they are neither frivolous nor invalid as a matter of law. (Doc. #125, pp. 2, 10-11.)

The Court will address Plaintiff's motion to strike portions of the Amended Answer, the affirmative defenses, and the Counterclaim, and then the motion to dismiss the Counterclaim.

## II.

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). "An allegation is 'impertinent' or 'immaterial' when it is neither responsive nor relevant to the issues involved in the action." Sprengle v. Smith Mar. Inc., No. 3:20-cv-1348-MMH-JRK, 2021 U.S. Dist. LEXIS 94974, at *6 (M.D. Fla. May 19, 2021). "'Scandalous' generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." Id. (citation omitted). "The purpose of a

motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." Hutchings v. Fed. Ins. Co., No. 6:08-cv-305-Orl-19KRS, 2008 U.S. Dist. LEXIS 75334, 2008 WL 4186994, at *2 (M.D. Fla. Sept. 8, 2008). A motion to strike is often denied "unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." Bank of Am., N.A. v. GREC Homes IX, LLC, No. 13-21718, 2014 U.S. Dist. LEXIS 8316, at *14 (S.D. Fla. Jan. 23, 2014) (internal quotations and citations omitted).

### A. Improper Answers To SAC Allegations

EmCyte argues that Defendants provided ambiguous answers to the allegations in paragraphs 21, 27, 29-32, 34-37, 40, 45, and 119 of the SAC. (Doc. #124, pp. 19-20.) Specifically, EmCyte takes exception to Defendants' answers stating that "to the extent an allegation sought to paraphrase or characterize the contents of a written document, the document speaks for itself and Defendants deny any allegations to the extent they are inconsistent with that document", or that certain allegations "state legal conclusions to which no answer is required" or "speak for themselves." Plaintiff argues that these answers should be stricken and properly amended. (Id.) Defendants respond that EmCyte's accusations overlook the entirety of Defendants' responses, which comply with Rule 8(b)(3). (Doc. #125, pp. 17-18.)

Rule 8(b) gives a party only three ways to respond to an allegation in a complaint: (1) admit the allegation; (2) deny the allegation; or (3) state that the party lacks knowledge or information sufficient to form a belief about the truth of the allegation. See Fed. R. Civ. P. 8(b)(1)(B), 8(b)(5); RE/MAX, LLC v. Prop. Professionals of Tampa Bay, Inc., No. 8:14-cv-419-T-33TGW, 2014 U.S. Dist. LEXIS 55667, at *2 (M.D. Fla. Apr. 22, 2014). "A party that does not intend to deny all the allegations must either specifically deny designated allegations or generally deny all except those specifically admitted." Fed. R. Civ. P. 8(b)(3). "A party that intends in good faith to deny only part of an allegation must admit the part that is true and deny the rest." Fed. R. Civ. P. 8(b)(5). "An allegation ... is admitted if a responsive pleading is required and the allegation is not denied." Fed.R.Civ.P. 8(b)(6).

The Court finds EmCyte's motion to strike is not well-founded. While EmCyte may be correct that "Rule 8 does not permit a defendant to answer that an exhibit 'speaks for itself,' or that plaintiff has alleged a 'legal conclusion'", Clarendon Am. Ins. Co. v. All Bros. Painting, No. 6:13-cv-934-Orl-22DAB, 2013 U.S. Dist. LEXIS 157668, at *7 (M.D. Fla. Nov. 4, 2013), with one exception the offending paragraphs do not do just that.  The paragraphs which state that a legal conclusion does not require an answer also state that the allegations are denied.  See Doc. #123,

¶¶ 27, 34, 37, 45.   This is sufficient under Rule 8(b).   The paragraphs which state that a document speaks for itself go on to deny allegations which are inconsistent with the written document. See Doc. #123, ¶¶ 29, 30, 31, 32, 35, 36, 40, 119.   The one exception is ¶ 21, which contains slightly different verbiage.   In the context of the entire Answer, this too is sufficient to constitute a denial.   Accordingly, EmCyte's motion to strike Defendants' answers to allegations in paragraphs 21, 27, 29-32, 34-37, 40, 45, and 119 of the Second Amended Complaint is denied.

### B. Immaterial and Prejudicial Allegations

EmCyte also argues that Defendants' Counterclaim is replete with immaterial and unfairly prejudicial allegations that must be stricken. (Doc. #124, p. 16.)   EmCyte seeks to strike allegations in paragraphs 1, 2, 20, 27 through 29, and 58 (Doc. #123, pp. 13, 17, 21) of the Counterclaim because they assert an immaterial bankruptcy conspiracy theory or cast a derogatory light on EmCyte and Mr. Pennie.   (Doc. #124, pp. 17-20.)   Specifically, EmCyte requests that following statements and/or paragraphs be stricken:

1. EmCyte's claims are designed and ***intended to punish Anna Stahl*** . . . EmCyte does not seek to vindicate legitimate rights but rather ***is intent upon destroying Anna Stahl and XLMedica*** . . .

2. ***EmCyte's stratagem has already forced Anna Stahl and XLMedica into bankruptcy. Yet even this is not a sufficient pound of flesh*** . . . EmCyte has continued to pursue ***baseless claims*** against Anna Stahl and XLMedica and ***will not stop until [they] are ground into the dust*** . . .

. . .

20.   . . . Because XLMedica and Anna Stahl were pursuing
their own path separate and apart from EmCyte, EmCyte
***retaliated by initiating legal action intended to
punish Anna Stahl*** for exercising independence from
EmCyte.

. . .

27.   While Plaintiff's claims have no merit, Patrick Pennie
through EmCyte commenced this action based on
insupportable and frivolous trademark infringement
allegations in ***a calculated attack designed to drive
Anna Stahl and XLMedica from the industry.***

28.   That Plaintiff and Mr. Pennie would take such an
action is no surprise as ***they have developed a
reputation for such retaliatory lawsuits and
anticompetitive conduct.***

29.   Indeed, Plaintiff's relentless prosecution of this
matter has already succeeded ***in forcing Anna Stahl
and XLMedica to seek bankruptcy protections.*** Even so,
***driving Ms. Stahl and XLMedica into bankruptcy*** was
not enough for Plaintiff, who had the bankruptcy stay
lifted, so they ***could continue their assault against
Ms. Stahl and XLMedica*** in this and a related state
court lawsuit.

. . .

58.   As previously mentioned, Counter-Defendant EmCyte
initiated this lawsuit and a state action before the
Circuit Court of the 20th Judicial Circuit, Civil
Division titled CASE NO.:19-CA-005819 ***in an attempt
to wrongfully leverage Anna Stahl and XLMedica into
settling an unjust lawsuit and to force Counter-
Plaintiffs into bankruptcy.***

(Doc. #123, ¶¶ 1-2, 20, 27-29, 58) (emphasis added).

The Court agrees that paragraphs 1 and 2 of the "Preliminary

Statement" of the Counterclaim should be stricken since they are

simply preliminary venting unrelated to the Counterclaim as a whole. The Court finds that the objected-to portions of ¶¶ 20, 27, 29, and 58 are sufficiently related to the abuse of process claim but that ¶ 28 is not. Accordingly, EmCyte's motion to strike portions of paragraphs 1, 2, and 28 is granted, but the motion to strike paragraphs 20, 27, 29, and 58 is denied.

### C. Affirmative Defenses

EmCyte argues that all nine of Defendants' affirmative defenses should be stricken because they either do not provide fair notice of the grounds upon which the defense rests, are impermissible shotgun affirmative defenses, or are merely general defenses. (Doc. #124, pp. 14-16.)

Pursuant to Federal Rule of Civil Procedure 12(f), courts may strike "insufficient defense[s]" from a pleading, either upon a motion or sua sponte. Fed. R. Civ. P. 12(f); PK Studios, Inc., 2016 U.S. Dist. LEXIS 116057, at *4-6; Morrison v. Executive Aircraft Refinishing, Inc., 434 F. Supp. 2d 1314, 1318 (S.D. Fla. 2005) ("[A] court must not tolerate shotgun pleading of affirmative defenses, and should strike vague and ambiguous defenses which do not respond to any particular count, allegation or legal basis of a complaint." (citations omitted)).

Like counterclaims, affirmative defenses are subject to the general pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Daley v. Scott, No. 2:15-cv-269-FtM-29DNF, 2016

WL 3517697, 2016 U.S. Dist. LEXIS 83735, at *3 (M.D. Fla. June 28, 2016). Rule 8(b)(1)(A) requires a party to "state in short and plain terms its defenses to each claim asserted against it," and Rule 8(c) requires a party to "affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(b)(1)(A) and (c).

Compliance with Rule 8(c) requires a defendant to set forth "some facts establishing a nexus between the elements of an affirmative defense and the allegations in the complaint," so as to provide the plaintiff fair notice of the grounds upon which the defense rests. PK Studios, Inc. v. R.L.R. Invs., LLC, No. 2:15-cv-389-FTM-99CM, 2016 WL 4529323, 2016 U.S. Dist. LEXIS 116057, at *4-5 (M.D. Fla. Aug. 30, 2016) (quoting Daley, 2016 U.S. Dist. LEXIS 83735, at *7). Boilerplate pleading — merely listing the name of the affirmative defense without providing any supporting facts — does not satisfy Rule 8(c) because it fails to provide notice sufficient to allow the plaintiff to rebut or properly litigate the defense. See Grant v. Preferred Research, Inc., 885 F.2d 795, 797 (11th Cir. 1989); Hassan v. U.S. Postal Serv., 842 F.2d 260, 263 (11th Cir. 1988).

In addition to pleading some facts tying the allegations in the complaint to the affirmative defenses asserted, a defendant must "identify the [specific] claim to which [each] defense applies." Lee v. Habashy, No. 6:09CV671ORL28GJK, 2009 U.S. Dist. LEXIS 99766, 2009 WL 3490858, at *4 (M.D. Fla. Oct. 27, 2009).

10

Indeed, the Eleventh Circuit has routinely criticized shotgun pleading of affirmative defenses, that is, "affirmative defenses address[ing] the complaint as a whole, as if each count was like every other count," instead of each defense being directed at specific counts in the complaint. Byrne v. Nezhat, 261 F.3d 1075, 1129 (11th Cir. 2001); see also Ledford v. Peeples, 657 F.3d 1222, 1242 n.63 (11th Cir. 2011).

With these standards in mind, the Court turns to the nine challenged affirmative defenses.

**(1) Affirmative Defense One – Failure to State a Claim**

Defendants' first affirmative defense alleges that Plaintiff's Second Amended Complaint fails to state a claim on which relief may be granted. (Doc. #123, p. 12.) This is a "general" defense properly raised in a Rule 12(b) motion, not an "affirmative" defense to be asserted in a responsive pleading. See Roth v. Nationstar Mortg., LLC, No. 2:15-cv-783-FtM-29MRM, 2016 U.S. Dist. LEXIS 168025, at *4 (M.D. Fla. Dec. 6, 2016) (citing In re Rawson Food Serv., Inc., 846 F.2d 1343, 1349 & n.9 (11th Cir. 1988)). In any event, this affirmative defense is without merit on its face. Accordingly, the Court grants EmCyte's request to strike this defense. PK Studios, Inc., 2016 U.S. Dist. LEXIS 116057, at *4-5.

### (2)   Affirmative Defense Two – Statute of Limitations

The second affirmative defense states that "the statute of limitations period for a trademark claim is four years, pursuant to Fla. Stat. § 95.11(3)" and that EmCyte's claim was not filed within the allotted time.  (Doc. #123, p. 12.) EmCyte argues the second affirmative defense should be dismissed as it is nothing more than a boilerplate defense with no facts connecting the elements of the defense with the allegations in the Second Amended Complaint. (Doc. #124, p. 14.)

The statute of limitations defense is a specifically enumerated affirmative defense, Fed. R. Civ. P. 8(c)(1), which "must be specifically pled." Navarro v. Santos Furniture Custom Design, Inc., 372 F. App'x 24, 26 (11th Cir. 2010).  While terse, this is sufficiently pled because it alleges the specific statute of limitations provision and references EmCyte's trademark claim, thus providing fair notice. Cf. Bowes v. Haymore, No. 13-14304-CIV-GRAHAM/LYNCH, 2014 U.S. Dist. LEXIS 202692, at *7 (S.D. Fla. July 8, 2014) (striking a statute of limitations affirmative defense where no statutory provision or claim in the complaint was identified). EmCyte's motion to strike affirmative defense two is therefore denied.

### (3)   Affirmative Defense Three - Trademark Consent

In order to succeed on the merits of a trademark infringement claim under 15 U.S.C. § 1114, a plaintiff must show "(1) its mark

was used in commerce by the defendant without the [plaintiff's] consent and (2) the unauthorized use was likely to cause confusion, or to cause mistake or to deceive." Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc., 496 F.3d 1231, 1241 (11th Cir. 2007). The Second Amended Complaint alleges that defendants used Plaintiff's mark without its consent (Doc. #22, ¶¶ 38-45), and Defendants have denied that allegation.  (Doc. #123, p. 6.)

As their third affirmative defense, Defendants state they "were authorized to utilize Plaintiff's marks and other content in the marketing of Defendants' goods and services, thus any and all use of Plaintiff's claimed trademarks was by consent." (Doc. #123, p. 12.)  This is not an affirmative defense because it is simply a denial of an element Plaintiff must prove in its trademark infringement claim.  In re Rawson Food Serv., 846 F.2d at 1349 & n.9.  EmCyte's motion to strike the third affirmative defense is granted.

### (4)  Affirmative Defense Four - Consent and No Rights to Descriptive Terms

The fourth affirmative defense states:

Plaintiff has no rights to the exclusive use of the purely descriptive terms "Pure PRP," "Pure BMC," or "Pure BMA" because such terms are the proper scientific description of the function of the products created by Plaintiff, Apex, and other producers.

(Doc. #123, p. 12.) EmCyte moves to strike the defense on the ground that it is simply alleging a defect in its prima facie case

(Doc. #124, p. 16), which Defendants do not deny. (Doc. #125, p. 12.) The Court finds that Defendants are in essence asserting that no trademark infringement occurred because EmCyte has no rights to the words "Pure PRP" and "Pure BMC."  As previously mentioned, "point[ing] out a defect in the plaintiff's prima facie case is not an affirmative defense." Williamceau v. Dyck-O'Neal, Inc., No. 2:16-cv-855-FtM-29CM, 2017 WL 2544872, 2017 U.S. Dist. LEXIS 90244, at *6 (M.D. Fla. June 13, 2017).  Accordingly, the Court will strike the fourth affirmative defense.

### (5)   Affirmative Defense Five – Attorney's Fees Due To Bad Faith

In their fifth affirmative defense, Defendants assert that EmCyte's claims were made in bad faith and without a reasonable basis in fact or law, therefore Defendants are entitled to attorney's fees under § 688.005, Florida Statutes. (Doc. #123, p. 12.) EmCyte argues this affirmative defense must be stricken because it does not explain how this defense applies to each claim. (Doc. #124, p. 15.)

A claim for attorney fees is not an affirmative defense.  "A determination that a plaintiff brought a claim in bad faith . . . is necessarily dependent upon the outcome of the plaintiff's case." Schmidt, 2015 U.S. Dist. LEXIS 27020, at *6.  Therefore, whether Defendants are entitled to attorney's fees pursuant to § 688.005 is not an issue to be litigated prior to the resolution of EmCyte's

case, nor is it a means for Defendants to avoid liability. If Defendants prevail, they may pursue their claim for attorney's fees and costs via an appropriate motion.  EmCyte's motion to strike the fifth affirmative defense is granted.

> ### (6)  Affirmative Defenses Six, Seven and Eight — Unclean Hands Doctrine, Trademark Misuse, Equitable Doctrine of Laches

Affirmative defenses six, seven, and eight simply state that each and every claim asserted in the Second Amended Complaint are either barred by the unclean hands doctrine, trademark misuse, or the equitable doctrine of laches, but with no supporting facts. (Doc. #123, p. 13.)

Plaintiff asserts that affirmative defenses of unclean hand and laches may be generally alleged and do not require extensive factual assertions.  (Doc. #125, p. 13.)  While extensive factual assertions may not be necessary, "such a defense, which does not provide any information connecting it to Plaintiff's claims, is precisely the type of bare-bones conclusory allegation" that is insufficient under Rule 8(c). Bartholomew v. Pollack & Rosen, P.A., No. 2:15-CV-135-FTM-29, 2015 U.S. Dist. LEXIS 80576, 2015 WL 3852944, at *2 (M.D. Fla. June 22, 2015); see, e.g., J.G.G. Tobacco Holding Co. v. Antigua Esteli Tobacco, No. 19-23732-Civ-COOKE/GOODMAN, 2020 U.S. Dist. LEXIS 155129, at *7 (S.D. Fla. May 20, 2020) (striking unclean hands defense where no facts were alleged that plaintiff used a trademark to deceive consumers); SE

Property Holdings, LLC v. McElheney, No. 5:12-cv-00164-RS-CJK, 2015 U.S. Dist. LEXIS 14647, 2015 WL 507188, at *3 (N.D. Fla. Feb. 6, 2015) (noting that "the party seeking to apply the unclean hands doctrine must describe with precision the 'egregious facts' that justify application of the doctrine); Groves v. Patricia J. Dury, M.D., P.A., No. 2:06-CV-338-FTM-99SPC, 2006 U.S. Dist. LEXIS 62540, 2006 WL 2556944, at *2 (M.D. Fla. Sept. 1, 2006) (striking unclean hands defense containing no facts); FDIC v. Bayer, No. 2:13-cv-752-FtM-29DNF, 2015 U.S. Dist. LEXIS 19265, at *10 (M.D. Fla. Feb. 18, 2015)(striking an affirmative defense that stated "the complaint was barred by the doctrine of laches" because "[l]aches . . . requires some basic factual allegations."); Fine's Gallery, Ltd. Liab. Co. v. From Eur. to You, Inc., No. 2:11-cv-220-FtM-29SPC, 2011 U.S. Dist. LEXIS 132257, at *4-6 (M.D. Fla. Nov. 16, 2011) (striking an affirmative defense where the defendants alleged no facts as to any theories of a plausible laches defense – that plaintiff delayed asserting a right or claim, the delay was not excusable, and there was undue prejudice).

The same is true for the trademark misuse affirmative defense. Although "courts uniformly allow trademark misuse . . . as an affirmative defense to a trademark infringement action", Whitney Info. Network, Inc. v. Gagnon, 353 F. Supp. 2d 1208, 1212 (M.D. Fla. 2005) (citing cases), the defense must "specifically allege how Plaintiff[] [has] allegedly misused the[] trademark." Sprint

<u>Sols., Inc. v. 4 U Cell, LLC</u>, No. 2:15-cv-605-FtM-38CM, 2016 U.S. Dist. LEXIS 84464, at *7 (M.D. Fla. June 29, 2016).

Here, by asserting that each and every claim asserted by Plaintiff is barred by trademark misuse (Doc. #123, p. 13), Defendants fail to provide any "facts establishing a nexus between the elements of [trademark misuse] and the allegations in the complaint."[1] <u>PK Studios, Inc.</u>, 2016 U.S. Dist. LEXIS 116057, at *4-5. Accordingly, EmCyte's motion to strike the sixth, seventh, and eighth affirmative defenses is granted.

**(7) Affirmative Defense Nine – Reservation of "Right"**

Affirmative defense nine states that Defendants "reserve the right to assert additional defenses as they may be discovered." (Doc. #123, p. 13.) "[A] reservation of the right to assert additional defenses through the course of discovery is not a defense at all and may be stricken." <u>Bruce v. Ocwen Loan Serv.</u>, LLC, 2012 U.S. Dist. LEXIS 147897, 2012 WL 4867224, *2 (M.D. Fla.

---

[1] While portions of Defendants' answer may generally include factual support for the defenses of unclean hands, trademark misuse, and laches, it is not clear which facts may apply to each defense so that EmCyte has fair notice of the grounds upon which the defenses rest. <u>See</u> <u>Island Co. Ltd. Liab. Co. v. Abercrombie & Fitch Co.</u>, No. 13-80333-CIV, 2014 U.S. Dist. LEXIS 188794, at *5 (S.D. Fla. Feb. 18, 2014) (striking general defenses of unclean hands, trademark misuse, and laches where the Answer had general factual support, but were not alleged with each affirmative defense in such a manner as to provide fair notice to the plaintiff).

2012). The Court therefore strikes the reservation of rights from Defendants' Amended Answer.

III.

Counterclaim defendants move to dismiss two counts of the Counterclaim for failure to state a claim upon which relief may be granted and as a shotgun pleading. The Court agrees in part.

### A. Shotgun Pleading

EmCyte argues that Defendants' second and third counterclaims must be dismissed because they violate the shotgun pleading rule. (Doc. #124, pp. 13-14.) Shotgun pleadings violate Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), by "fail[ing] to one degree or another ... to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Weiland v. Palm Beach Cnty. Sheriff's Ofc., 792 F.3d 1313, 1323 (11th Cir. 2015) (defining the four types of shotgun pleadings).[2] Courts in the Eleventh Circuit have little

---

[2] The four "rough" types or categories of shotgun pleadings identified by the Eleventh Circuit in Weiland are:

> The most common type — by a long shot — is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of realleging all preceding counts but is guilty of the

tolerance for shotgun pleadings. See generally Jackson v. Bank of Am., 898 F.3d 1348 (11th Cir. 2018) (detailing the unacceptable consequences of shotgun pleading). A district court has the "inherent authority to control its docket and ensure the prompt resolution of lawsuits," which includes the ability to dismiss a complaint on shotgun pleading grounds. Weiland, 792 F.3d at 1320. In a case where a defendant files a shotgun pleading, a court "should strike the [pleading] and instruct counsel to replead the case — if counsel could in good faith make the representations required by Fed. R. Civ. P. 11(b)." Byrne v. Nezhat, 261 F.3d 1075, 1133 n.113 (quoting Cramer v. Florida, 117 F.3d 1258, 1263 (11th Cir. 1997)).

Here, the second and third counts of the Counterclaim constitute a shotgun pleading because the first paragraph in each count incorporates the allegations of all preceding allegations. (Doc. #123, ¶¶ 44, 57.) "The typical shotgun complaint contains several counts, each one incorporating by reference the

---

venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

Weiland, 792 F.3d at 1322-23.

allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002). Doing so makes it nearly impossible for EmCyte and the Court to determine which factual allegations give rise to which claims for relief. Accordingly, the second and third counts are dismissed on shotgun pleading grounds, with leave to amend. Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1296 (11th Cir. 2018).

**B. Failure to State a Claim**

"Counterclaims, like claims for relief in a complaint, must contain a short and plain statement showing an entitlement to relief, and the statement must give the opposing party fair notice of what the claim is and the grounds upon which it rests." Boat Owners Ass'n of the United States v. Flagship Towing LLC, No. 2:15-cv-197-FtM-29CM, 2015 U.S. Dist. LEXIS 98315, at *3 (M.D. Fla. July 28, 2015) (citing Fed. R. Civ. P. 8(a)(2)); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, (2007). A motion to dismiss a counterclaim under Fed. R. Civ. P. 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint. Whitney Info. Network, Inc. v. Gagnon, 353 F.Supp.2d 1208, 1210 (M.D. Fla. 2005); Fabricant v. Sears Roebuck, 202 F.R.D. 306, 308 (S.D. Fla. 2001).

Counterclaims therefore must consist of "more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." Twombly, 550 U.S. at 555 (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555; see also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a counterclaim as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzaín, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a [Plaintiff's] liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

**(1)   Counterclaim   II   —   Tortious   Interference   With Advantageous Business Relationship**

EmCyte asserts that Defendants' second count fails to allege a cognizable claim for tortious interference that demonstrates any liability for alleged misconduct. (Doc. #124, p. 5.)

"The   elements   of   tortious   interference   with   a   business relationship are (1) the existence of a business relationship (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994) (citation omitted); see also Duty Free Americas, Inc. v. Estee Lauder Cos., Inc., 797 F.3d 1248, 1279 (11th Cir. 2015) (stating the same).  "As a general rule, an action for tortious interference with a business relationship requires  a  business  relationship  evidenced  by  an  actual  and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." Ethan Allen, Inc., 647 So. 2d at 815.

EmCyte argues that one fundamental problem with Defendants' tortious   interference   counterclaim   is   the   absence   of   any allegation that EmCyte or Patrick Pennie[3] induced a third party to

---

[3] Mr. Pennie is the CEO of EmCyte.  (Doc. #123, p. 14.)

breach a contract or relationship with Defendants. (Doc. #124, p. 6.) "One is liable for commission of this tort who interferes with business relations of another, both existing and prospective, by inducing a third person not to enter into or continue a business relation with another or *by preventing a third person from continuing a business relation with another*." Smith v. Ocean State Bank, 335 So. 2d 641, 643 (Fla. 1st DCA 1976) (emphasis added).

Here, Defendants allege that on October 27, 2018, XLMedica entered into a distribution agreement with Apex, which required XLMedica to sell Apex Biologix products and those obtained through Apex's distributor agreements, including EmCyte. (Doc. #123, ¶ 19.) Defendants further allege that Mr. Pennie and EmCyte released a letter to XLMedica and Apex's customers about the present lawsuit and that Apex's XCell brand devices were unsafe. (Id., ¶¶ 45, 49.) Finally, Defendants allege that "Plaintiff's actions have disrupted and harmed the professional relationship between XLMedica and Apex." (Id., ¶ 30.) Accepting the factual allegations as true and viewing them in a light most favorable to Defendants, the allegations set forth a plausible claim that Plaintiff interfered with business relationship between XLMedica and Apex by causing a disruption in the ongoing business relationship. Smith, 335 So. 2d at 643. Accordingly, EmCyte's motion to dismiss on this basis is denied.

Next, EmCyte argues that Defendants' tortious interference count must be dismissed because the claim does not include an actual, identifiable group with whom there was interference. (Doc. #124, p. 7.) EmCyte is correct that the party "allegedly interfered with must be actual and identifiable, and not just a large group such as the community at large." Allegiance Healthcare Corp. v. Coleman, 232 F. Supp. 2d 1329, 1336 (S.D. Fla. 2002) (citing Ethan Allen, Inc., 647 So. 2d at 815). However, Defendants allege that EmCyte and Mr. Pennie's statements in the letter were intended to interfere with and harm the relationship between XLMedica and Apex, as well as their mutual customers. (Doc. #123, ¶¶ 52-53.) The allegations taken as true, are sufficient to plausibly identify actual parties with whom Plaintiff allegedly interfered, and not just a large group. Cf. Scanz Techs., Inc. v. JewMon Enters., LLC, No. 20-22957-cv-Scola, 2021 U.S. Dist. LEXIS 2651, at *32 (S.D. Fla. Jan. 6, 2021) (finding an actual and identifiable business relationship was inadequately pled where it was alleged there were "numerous business relationships with clients in Florida, located throughout the United States and . . . the world.").

Finally, EmCyte moves for dismissal because Defendants did not provide details about "what precisely" was published that intentionally and unjustifiably tortiously interfered.[4] (Doc.

---

[4] Defendants also allege that Mr. Pennie and EmCyte communicated with Anna Stahl and XLMedica's customers and

#124, p. 8, citing <u>Maale v. Kirchgessner</u>, No. 08-80131-CIV, 2009 WL 1066900, 2009 U.S. Dist. LEXIS 135041, at *12 (S.D. Fla. June 5, 2009)). Defendants respond that they provided specific allegations of fact about EmCyte and Mr. Pennie's publication of the letter, which was sent to XLMedica's customers, asserting the products sold by XLMedica were unsafe. (Doc. #125.)

The Court agrees with Defendants. Unlike <u>Maale</u>, Defendants allege specific "factual content that would allow the court to draw the reasonable inference that the [Plaintiff] is liable for the misconduct alleged." <u>Maale</u>, 2009 U.S. Dist. LEXIS 135041, at *13. For example, Defendants allege that EmCyte's letter suggested that Apex's XCell brand devices were unsafe, and had "questionable sterility and biocompatibility with human tissue." (Doc. #123, ¶¶ 49-50.) Defendants further allege that as a result of the letter being sent to its customers, as well as EmCyte's customers, there was interference between Defendant and its customers and Apex. (<u>Id.</u>, ¶¶ 53.) Taking the allegations as true and viewing them in a light most favorable to Defendants, the allegations are sufficient

---

distributors about the conduct [EmCyte] alleges in this lawsuit." (Doc. #123, ¶ 45.) EmCyte argues that because communications pertaining to judicial proceedings are expressly privileged, any communications about this case cannot form the basis of a tortious interference claim. (Doc. #124, p. 8.) Drawing all reasonable inferences in favor of Defendants, the allegations do not suggest that Defendants are relying upon communications relating to this present proceeding; rather, they only allege that EmCyte's letter discussed Defendants' conduct giving rise to this lawsuit. Dismissal on this basis is therefore inappropriate.

to show the precise nature of the publication that interfered with XLMedica's business relationship with Apex.  Accordingly, the Court finds that Defendants' have alleged a plausible tortious interference with an advantageous business relationship counterclaim.

### (2)  Count III — Abuse of Process

EmCyte moves to dismiss Defendants' abuse of process claim because it "lacks any allegation of misuse of process after the process issued." (Doc. #124, p. 9.)

To state a claim for abuse of process, Defendants must allege facts showing "(1) an illegal, improper, or perverted use of process by [EmCyte]; (2) an ulterior motive or purpose in exercising the illegal, improper, or perverted process; and (3) damages to the [Defendants] as a result." Keehnle v. Charter Elec. Experts, LLC, No. 8:18-cv-2880-T-23CPT, 2019 U.S. Dist. LEXIS 30818, at *2 (M.D. Fla. Feb. 27, 2019) (citing Valdes v. GAB Robins N. Am. Inc., 924 So.2d 862 (Fla. 3d DCA 2006)). The tort of abuse of process is concerned with the use of process *after it issues*. Marty v. Gersh, 501 So. 2d 87, 89 (Fla. 1st DCA 1987). "The usual case of abuse of process involves some form of extortion." S & I Investments v. Payless Flea Market, Inc., 36 So. 3d 909, 917 (Fla. 4th DCA 2010) (internal marks omitted).

In their third count, Defendants allege that "EmCyte initiated this lawsuit and a state action . . . in an attempt to

wrongfully leverage Anna Stahl and XLMedica into settling an unjust lawsuit and to force Counter-Plaintiffs into bankruptcy." (Doc. #123, ¶ 58.) Defendants further allege that the actions described above "were not initiated" for any proper purpose, but were conducted for "improper ulterior purposes." (Id., ¶¶ 60, 63.) Taking these allegations as true, Defendants have failed to allege that process was abused *after* this action was commenced. The "mere filing of a complaint and having process served is not enough to show abuse of process." Della—Donna v. Nova Univ., Inc., 512 So.2d 1051, 1055 (Fla. 4th DCA 1987). Furthermore, an improper motive by itself is not sufficient. See, e.g., Miami Herald Pub. Co., Div. of Knightridder Newspapers, Inc. v. Ferre, 636 F. Supp. 970, 975 (S.D. Fla. 1985); Cazares v. Church of Scientology of Cal., Inc., 444 So. 2d 442, 444 (Fla. Dist. Ct. 1983) ("[t]he maliciousness or lack of foundation of the asserted cause of action itself is actually irrelevant to the tort of abuse of process."); Peckins v. Kaye, 443 So. 2d 1025, 1026 (Fla. Dist. Ct. 1983) (threat of causing party "undue and inordinate expenditures of their time and money" or "ulterior motive of harassment" is not sufficient). Accordingly, Defendants have not set forth a plausible abuse of process counterclaim.

EmCyte also argues that Defendants' third count should be dismissed with prejudice because the allegations only pertain to initiating and prosecuting the present case and, therefore,

further amendment would be futile.  (Doc. #124, p. 13.)  The Court will allow an opportunity to amend this claim, if possible. Defendants' abuse of process counterclaim is dismissed without prejudice.

Accordingly, it is now

**ORDERED:**

1. Plaintiff's Omnibus Motion to Dismiss Amended Counterclaims and Strike Affirmative Defenses, Immaterial, Scandalous Allegations, and Improper Answers (Doc. #124) is **GRANTED IN PART and DENIED IN PART** as follows:

   (a) EmCyte's Motion to Strike paragraphs 21, 27, 29-32, 34-37, 40, 45, and 119 of Defendants' Amended Answer to the SAC is **DENIED**.

   (b) EmCyte's Motion to Strike paragraphs 1, 2, and 28 of the Counterclaim is **GRANTED** and these paragraphs are **stricken**.  The motion is otherwise **DENIED** as to paragraphs 20, 27, 29, and 58.

   (c) EmCyte's Motion to Strike Affirmative Defenses is **GRANTED** as to Affirmative Defenses 1, 3, 4, 5, 6, 7, 8, and 9.  The Motion is **DENIED** as to Affirmative Defense 2.

   (d) EmCyte's Motion to Dismiss Defendants' Counterclaim is **GRANTED** as to Count 2 and Count 3, which are **dismissed without prejudice**.

2. Defendants/Counter-Plaintiffs may file Second Amended Affirmative Defenses and a Second Amended Counterclaim within **FOURTEEN (14) DAYS** of this Opinion and Order.

   **DONE** AND **ORDERED** at Fort Myers, Florida, this __9th__ day of February, 2022.


                                        _____
                                        JOHN E. STEELE
                                        SENIOR UNITED STATES DISTRICT JUDGE


Copies:
Counsel of record